UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATSOURCE LLC,<br><br>　　　　　　Plaintiff,<br>v.<br><br>FLAVIO RUFINO GAZANI,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.: 06 CV 1843<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL AFFIDAVIT OF DEFENDANT FLAVIO GAZANI IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

　　　　I, Flavio Rufino Gazani, being duly sworn and subject to the penalty of perjury, hereby depose and state:

　　　　1.　　I am over the age of eighteen (18) and am otherwise competent to make this Affidavit. This information contained herein is based on my personal knowledge. I provide this Supplemental Affidavit in response to the Court's Order dated October 31, 2006.

　　　　2.　　**Questions 1 and 2:** Not being a computer expert, I cannot respond to these questions based on personal knowledge.

　　　　3.　　**Question 3:** I do not recall exactly which files were on the CD-ROM, because it has been well over a month since these files were last accessed. (Although I did attempt to view the file list on three CD-ROMs to determine whether they contained any information of Natsource. Two of the CD-ROMs appeared to be blank, and the other had a listing of files,

7687548

although upon advice of counsel I did not review the file list in detail before turning the disk over to my attorney.) However, my recollection is that the CD-ROM contained a result of the model input update (not output assessments), which was well within my area of responsibility, as well as project assessment reports and documents pertaining to the EB Database Program, which I maintained. Moreover, I recall that the RISO CDM (Clean Development Mechanism) Pipeline, which was in the public domain and was obtained from the Internet was on the CD-ROM. I updated Natsource information using that document as part of my job duties. The files on the CD-ROM did not constitute a complete set, or even part, of the DRM operating files. I was never told that I could not copy these files, nor was I told that they were confidential. I did not use these files for any purpose other than the performance of my duties, nor have I disclosed them to anyone else. As the CD-ROMs should show, other than checking to see if any filenames contained on the CD-ROM related to Natsource in order to return the CD-ROM to Natsource, the information was not even accessed after September 27, at which time I still was employed with Natsource.

4. **Question 4:** As far as I was aware, I had authorization to access the files that were on the disk, and I was not told otherwise. I was provided with the password to the various DRM files, and I apparently was one of five or six people with full administrative access, according to Michael Grande's Affidavit. I was neither asked nor required to execute any confidentiality agreement or non-compete agreement before starting employment with Natsource, or at any time during the course of my employment with Natsource. Nor was I ever told that I could not copy information for reference purposes onto a CD-ROM.

5.    **Question 5:** I copied various documents that I anticipated I would need to refer back to onto a CD-ROM for easy reference. I did not access these documents after September 27, 2006, other than to look at the file list to confirm that the CD-ROM contained Natsource information in order to return the CD-ROM to Natsource. The CD-ROM was in my office laptop because that is where I used it to access information in the performance of my duties. At no time did I use the work CD-ROM in my personal computer at home or elsewhere. I did not disclose this information to anyone, nor did I use it other than in the performance of my duties for Natsource. I would have returned this information to Natsource at the time of my termination if I had thought of it when I was abruptly told that I was being dismissed effective immediately shortly after I announced my resignation (which was to have been effective in December 2006). I immediately turned all information I had regarding Natsource over to my attorney. We returned all of the information I had relating to Natsource to Natsource's attorneys, and I retained no copies of that information. Therefore, there can be no injury to Natsource. Moreover, although I had no intention of disclosing the information, I do not believe the information is commercially valuable. For instance, some of the information on the CD-ROM is available publicly (for instance, the Pipeline document referenced above). Much of the information is old and outdated given how quickly risk assessments can change based on the various factors affecting risk. Moreover, several of the documents I had on the CD-ROM related to projects that Natsource did not even choose to invest in. Thus, the information regarding those projects would have no value even to Natsource. Without more details about the exact files contained on the CD-ROM, I cannot provide additional detail about why the information is not commercially valuable and/or

would not injure Natsource if it were disclosed (although as noted above, I have retained no copies and have no intention of disclosing any information I know).

6. **Question 6:** The only information of Natsource that was in my possession (aside from my immigration paperwork), was returned to Natsource shortly after my employment was terminated. My counsel and I have been advised that the original CD-ROMs were going to be maintained with proper "chain of custody" procedures to ensure that there was no tampering with the CD-ROMs that were provided to Natsource.

7. **Question 7:** There are no copies, duplicates or replicas, either partial or otherwise, of the CD-ROM, nor did I retain the information in any other format.

8. **Question 8:** No information was accessed from the CD-ROMs, other than through my office computer, except on the one occasion I briefly viewed the file list to determine whether the CD-ROMs contained Natsource files. No files were copied from the CD-ROMs, and none of the information contained thereon was distributed, disclosed, or used other than in the performance of my duties with Natsource.

9. **Question 9:** Assuming the Court is referring to the September 27, 2006 date that Mr. Rodokanakis indicated I had accessed files from a CD-ROM on my office computer, I had physical possession of my computer in the Natsource offices. I accessed the CD-ROM from my office computer. Because this was in the Natsource offices, I am not aware of anyone other than Natsource employees who would have had access to the computer.

10. **Question 10:** I was given a password to access all information related to the DRM files, and I had a business need for this information. This is confirmed by the various affidavits submitted by Natsource in support of their Motion for Temporary Restraining Order. I

did not use that password to access information after my employment was terminated, and I did not use any information other than for the benefit of Natsource during the course of my employment, nor did I disclose any such information to any third party. Since my employment was terminated, I have neither used nor disclosed any Natsource information to any third party. However, as noted above, I never was asked to sign any confidentiality agreement, I was not told that the information was confidential, and I was never told that I could not copy the information.

11. **Question 11:** As far as I know, my access to the various DRM files was not limited during my employment. I was never told that I could not copy these files.

12. **Question 12:** I currently reside in Brazil, where I intend to reside permanently given that my H-1B visa status has terminated as a result of my separation from Natsource, my former visa sponsor. I do not have any plans to return to the United States in the future. Although Natsource's counsel was advised that I would be returning to Brazil because of my visa status, and was asked to pay for my return ticket as required under U.S. law (which request was repeatedly ignored), as far as I am aware, Natsource made no effort to serve me with the Summons and Complaint in this action. As of this date, I have not been so served. I am executing this Affidavit in England, where I am traveling currently.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 2nd day of November, 2006.

*Flavio Rufino Gazani*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, Supplemental Affidavit of Flavio Gazani, has been e-filed and served upon the following persons by first class mail, properly addressed, and with the correct amount of postage affixed thereto.

>Susan F. Wiltsie
>Scot Hinshaw
>Hunton & Williams LLP
>1900 K Street, NW
>Washington, DC  20006
>
>Attorneys for Plaintiff

Dated this 2d day of November, 2006.

_____/s/_____
Christine A. Samsel, Esq.